## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**LASONJA TALLEY,**
    Plaintiff,

**v.**                                                  **Case No. 1:23-cv-834-CLM**

**CALHOUN COUNTY**
**DEPARTMENT OF HEALTH**
***et al.,***
        Defendants.

## MEMORANDUM OPINION

Lasonja Talley sues the Calhoun County Department of Health and three of its employees (Denise Gilbert, Mary Gomillion, and Traci Rowell) for race discrimination and retaliation. The Defendants collectively move to dismiss all claims brought against them. (Doc. 14). As explained below, the court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion to dismiss.

## BACKGROUND

Lasonja Talley is an African American woman who works for the Calhoun County Health Department as a vital records clerk.[1] Each of the individual defendants supervised Talley in some way. Denise Gilbert was the office manager and Talley's direct supervisor. Gilbert reported to Traci Rowell, the clerical director. And Mary Gomillion was the District

---

[1] Talley ends her factual narrative by saying that the Health Department threatened to fire her if she fails to follow rules and procedures. The Defendants say that Talley resigned one month after her suspension. Because Talley does not allege that she was fired or quit her job, and she has not pleaded a claim for wrongful or constructive termination, the court will assume Talley works for the Department.

Administrator for Northeast Alabama, with oversight over departments in 11 counties, including Calhoun County.

Talley sues the Department and these three employees for race discrimination (Counts I and III) and retaliation for reporting race discrimination (Count II). Because the alleged retaliation stems from Talley's June 2021 complaint about race discrimination, the court breaks these events into pre-complaint and post-complaint. Because Talley is defending against a motion to dismiss, the court recites the facts as Talley pleads them and assumes they are true. *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020).

## A. Pre-complaint events

Talley started working at the Department in 2005 and was not disciplined during her first 10 years. But she was written up four times over the next six years (2015—2021).

Talley was first written up in February 2015 after she refused to sit at the Department switchboard during a fire. She was then written up twice in May 2020 for unprofessional client interactions; allegations that Talley says were false.

Finally, in June 2021, Talley's white co-worker Christy Wright put a death certificate in the wrong folder, then sent it to the wrong nursing home, which resulted in a HIPAA violation. Rather than discipline Wright, the Department disciplined Talley, who had nothing to do with the mistake. So Talley contacted employee relations to complain that the incident was discriminatory—*i.e.*, a Black employee was disciplined for a white employee's mistake. Rather than help Talley, someone at employee relations told Talley, "We can do anything."

**B. Post-complaint events**

Talley says that ever since she complained about race discrimination, she got blamed for any customer complaints—even when she had nothing to do with the incident. She gives three examples:

- In December 2021, a female customer complained that a Department employee belittled her. Talley was written up, even though she didn't talk down to any customer.
- In February 2022, a client's mother complained that a Department employee cut her daughter off while she was talking. Talley was written up, even though she wasn't the employee who talked to the customer.
- In April 2022, a customer complained after Talley asked him to complete a birth certificate application form, then wait for his turn to be seen. The customer cursed Talley, then later complained that he was not served, even though he received his birth certificate.

Talley says that Gilbert wrote her up for each incident, despite knowing that Talley could not have been the person involved in the February 2022 incident. Rowell passed the complaints up to Gomillion. Gomillion recommended that Talley be suspended.

On April 11, 2022, (the same day as the last incident), the Department sent Talley a notice to attend a pre-suspension hearing on May 12, 2022. During the hearing, Gomillion falsely said that Talley was the only Department employee that caused problems. The Department then suspended Talley without pay from July 18 to July 22, 2022 and threatened to fire her if she failed to follow Department rules and policies.

**C. The lawsuit**

Talley sued the Department, Gilbert, Rowell, and Gomillion one year later. (Doc. 1). She seeks compensatory and punitive damages, back pay, and reinstatement (despite not pleading she was fired or demoted).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court accepts the plaintiff's well-pleaded allegations as true and makes reasonable inferences in his favor. *Crowder*, 963 F.3d at 1202. But those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the court disregards both conclusory statements and "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Talley sues the individual defendants in their official and individual capacities, resulting in a variety of capacity-based defenses. So the court breaks its discussion into two parts: (a) claims against the state government and its agents and (b) individual capacity claims.

### A. Claims against the state government and its agents

The Defendants argue that sovereign immunity prevents Talley from suing the Health Department, a government agency, and its three employees in their official capacities as government employees.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." U.S. Const. amend. XI. "Although the express language of the amendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." *Carr v. City of Florence, Ala.*, 916 F.2d

1521, 1525 (11th Cir. 1990). Simply, "the Eleventh Amendment protects a State from being sued in federal court without the State's consent." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).

### 1. Calhoun County Health Department

The Eleventh Amendment "bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued." *Id.* The court considers four factors to determine whether an entity qualifies as an "arm of the State": "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309. Applying these *Manders*' factors, the Eleventh Circuit has held that Alabama county health boards constitute "arm[s] of the State." *See Ross v. Jefferson Cnty. Dept. of Health.*, 701 F.3d 655, 661 (11th Cir. 2012). So the court finds that the Calhoun County Health Department is an arm of the state that is entitled to sovereign immunity. The court will therefore **DISMISS** all claims against the Health Department as being barred by the Eleventh Amendment.

### 2. Individual Defendants in their Official Capacity

Talley sues Denise Gilbert, Traci Rowell, and Mary Gomillion in their official capacities. Suing government employees in their official capacities "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). As a result, "[s]uits against state officials in their official capacity [] should be treated as suits against the State." *Id.*

But there's one caveat: The Eleventh Amendment doesn't prevent federal courts from granting prospective injunctive relief that prevents the employees from continually violating federal law. *See generally Ex parte Young*, 209 U.S. 123, 159 (1908) (allowing equitable relief in official capacity suits to prevent "simply [] illegal act[s] upon the part of a state

official [] attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional.").

Based on these rules, the court will **DISMISS** as barred by the Eleventh Amendment all claims against Gilbert, Rowell, and Gomillion in their official capacities, except one: Talley's request for reinstatement because it is the only request for prospective injunctive relief.[2] (Doc. 11, p. 21, ¶ 1). That said, the court notes that Talley has not pleaded that she was fired or quit her job, so it's unclear what reinstatement would entail.

## B. Individuals capacity claims

That leaves Talley's claims against Gilbert, Rowell, and Gomillion in their individual capacities. Unlike official capacity claims, individual capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U.S. at 25. The Eleventh Amendment does not "preclude a damages award against state officials in their individual capac[ities]." *Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir. 1989). So the Eleventh Amendment provides no defense for Talley's individual capacity claims.

The individual Defendants make several arguments for dismissing the individual capacity claims. The court starts with qualified immunity.

### 1. Qualified Immunity

As just explained, state officials sued in their individual capacities cannot benefit from sovereign immunity. But they can benefit from the defense of qualified immunity. *See United States v. Lanier*, 520 U.S. 259,

---

[2] Talley's request for back pay benefits does not fall within the *Ex parte Young* exception because it is a request for retroactive relief. And though in other contexts front pay may be considered equitable, such prospective relief in the context of sovereign immunity is not. *See Edelman v. Jordan*, 415 U.S. 651, 662 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.") Because the state will pay any front or back pay awarded to Talley, sovereign immunity bars Talley from seeking front or back pay from Gilbert, Rowell, or Gomillion in their official capacities.

270 (1997). A successful qualified immunity defense requires two things. First, the state official must have been acting within their discretionary authority when the alleged constitutional violation occurred. *Collier v. Dickinson*, 477 F.3d 1306, 1307 (11th Cir. 2007). Second, the state official's conduct must "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In all three counts, Talley pleads facts that show Gilbert, Rowell, and Gomillion were acting within their discretionary authority, so the individual Defendants satisfy the first requirement. And Talley meets the second requirement because "the equal protection right to be free from intentional racial discrimination" is clearly established. *Brown v. City of Fort Lauderale*, 923 F.2d 1474, 78 (11th Cir. 1991). As this court noted in *Chames v. Wade,* "[t]he [Eleventh] Circuit has 'often noted the patently obvious illegality of racial discrimination in public employment.'" 1:21-cv-1571, 2023 WL 5055465, at *7 (N.D. Ala. Aug. 8, 2023) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1300 (11th Cir. 2009)). Similarly, freedom from retaliation is a clearly established statutory right under §1981. *See Ratliff v. DeKalb Cnty, Ga.*, 62 F.3d 338, 340 (11th Cir. 1995).

So if all other necessary facts were pleaded, Gilbert, Rowell, and Gomillion would not be entitled to qualified immunity on any of the three counts because Talley pleads facts in each claim that, if proved, would establish a violation of a clearly established right. But as explained later, Talley fails to plead causation in Count II. So the court finds that (a) the officers are entitled to qualified immunity on Count II because of a pleading deficiency that could be corrected by amending the complaint, and (b) they are not entitled to qualified immunity on Counts I and III.

### 2. Statutes of Limitation

Talley pleads her claims under 42 U.S.C. §§ 1981 and 1983. The statute of limitations for § 1981 claims is four years, *see Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008), and the

statute of limitations under §1983 is two years. *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989).

"[F]ederal law determines when the cause of action for federal civil-rights claims accrues—in other words, when the statute of limitations begins to run." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1225 (11th Cir. 2024). Accrual generally begins when "facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id.* (quoting *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). Put differently, the statute of limitations period begins to run when the plaintiff knows or has reason to know of her injury and the inflicting party. *Mullinax*, 817 F.2d at 716.

By itself, Talley's allegation that she was wrongly disciplined for refusing to work during a fire in 2015 is time-barred. But Talley may use the 2015 incident as evidence of an individual Defendants' discriminatory intent in taking later adverse employment actions against Talley—as long as Talley can tie the 2015 incident to the individual Defendant. All other allegations fit within the relevant statutes of limitation, so the court will not dismiss any count as untimely filed.

### 3. Failure to plead a claim (Rule 12(b)(6))

The individual Defendants argue that Talley fails to plead sufficient facts to prove the claims against them. The court addresses the three counts in the order Talley pleaded them.

- **Count I: Race Discrimination (§§ 1981, 1983)**

In her first count, Talley pleads that "all defendants" disciplined and suspended her without cause because of her race. "To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Co. v. Nat'l Assoc. of Afr. Am.-Owned Media, et al.*, 589 U.S. 327, 341 (2020).

Talley meets this low threshold if you view the Defendants' official and individual actions collectively. For example, Talley pleads facts that, if proved true, could show that she was disciplined for conduct and failures made by a similarly situated white co-worker, who was not disciplined:

> 26. Throughout Talley's employment, numerous employees and clients complained about the attitude and behavior of Christy Wright (white), however, she was never written up.
>
> 27. Christy Wright was eventually demoted because she was not taking the deposits to the bank.
>
> 28. The administration fought for Christy Wright to retain her job. . . .
>
> 33. On or about June 28, 2021, a white co-worker, Christy Wright, placed a death certificate in the wrong folder then sent it to the wrong funeral home causing a HIPPA violation.
>
> 34. Talley, the black employee, was reprimanded for placing the death certificate in the wrong folder.
>
> 35. Christy Wright, the white employee, received no discipline for her conduct which caused the violation. . . .
>
> 64. Other white employees who committed the same alleged offenses were treated differently than Talley as they were not disciplined in any way, were not precluded from receiving raises, and were not suspended for 5 days.
>
> 65. Christy Wright placed the paperwork in the wrong folder which caused a HIPPA violation, yet Talley was disciplined-not Wright.

66. Christy Wright was the subject of numerous complaints of her unprofessional manner toward employees and clients, yet she was never written up, precluded from receiving raises, and not suspended for 5 days.

67. Instead, when Christy Wright committed a much more egregious offense, theft, and the administration fought for her job.

68. The Defendants have not stated why Talley was treated differently from white employees who engaged in similar conduct, and instead responded "we can do anything" in response to Talley's complaint of discrimination. . . .

74. The Defendants have not stated a reason for why white employees were not subject to the same scrutiny for similar conduct or written up for non-offenses.

75. The Defendants had a custom of disciplining only black employees for conduct or non-offenses, and not writing up white employees for the same conduct.

76. The widespread practice of disciplining only black employees was so "permanent and well settled as to constitute a 'custom or usage' with force of law."

(Doc. 11, ¶¶ 33-35, 64-68, 74-76).[3] These facts plead a plausible claim of race discrimination, so the court will not dismiss Count I.

---

[3] Talley mentions a "widespread practice of disciplining only black employees" in all three counts. (Doc. 16, ¶¶ 76, 92, 113). Pattern and practice discrimination and disparate treatment are "discrete theories" of liability. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000). Talley does not plead a separate pattern and practice claim, so the court treats mentions of the Department's "widespread practice" as one piece of Talley's mosaic of evidence for the pleaded count.

That doesn't mean that Talley's pleading has no flaws. For example, Talley pleads that she was wrongly disciplined for disrespecting a client on February 17, 2022. (Doc. 11, ¶39b). Talley says that the bad actor was "a black woman with black curly hair," which could describe one of her co-workers or a "black travel nurse." *Id*. While this may help prove a different claim (*e.g.*, retaliation), proving that one black female was disciplined for the wrongdoing of another black female would not show that race was a but-for cause of the adverse decision.

Further, Count I focuses on the Department's acts as a whole, thus pleading few facts that would prove the bad acts and motivations of the individual defendants. Here is all that Talley pleads about the Defendants individually in Count I:

> 71. Calhoun County Health Department, Denise Gilbert, Mary Gomillion, and Traci Rowell are all persons who acted under color of statutes, regulations, custom, or usage, of the State of Alabama, subjected Talley, or caused Talley to be subjected to the deprivation of her rights, privileges and immunities.
>
> 72. Denise Gilbert and Traci Rowell each personally participated in the violations when they wrote up Talley for non-offenses and did not subject white employees to the same scrutiny for the same or similar conduct.
>
> 73. Mary Gomillion personally participated in the violations when she accepted the write ups as true and submitted them to the ADPH and recommended suspension when she knew or should have known the write ups were false.

(Doc. 16, ¶¶ 71-73). As explained, only Talley's individual capacity claims against Gilbert, Gomillion, and Rowell are going forward. That means Talley will have to prove that each Defendant *individually* acted against Talley because of her race. So moving forward, Talley will have to plead and prove more facts about the individual defendants' liability.

- **Count II: Retaliation (§§ 1981, 1983)**

Talley next claims that the individual Defendants disciplined her from December 2021 through her disciplinary hearing in June 2022 in retaliation for Talley's complaint that she was wrongly accused of Christy Wright's June 2021 misconduct. (Doc. 11, ¶¶ 82-96). "To state a retaliation claim under §1981, a plaintiff must allege a defendant retaliated against him because the plaintiff engaged in statutorily protected activity." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1311 (11th Cir. 2010).

Talley has sufficiently pleaded that she engaged in a protected activity (*i.e.*, a race discrimination complaint), as the Circuit Court has said that both formal and informal complaints can qualify. *Brown v. Wrigley Mfg. Co. LLC.*, No. 21-11328, 2023 WL 2386500, at *7 (11th Cir. Mar. 7, 2023). And Talley has sufficiently pleaded an adverse action—*i.e.*, discipline and suspension.

But Talley fails to sufficiently plead causation. Talley pleads that, "[i]mmediately following this incident, Talley contacted employee relations to complain of discrimination relating to the death certificate incident." (Doc. 11, ¶38). Talley does not plead that anyone told Gilbert, Gomillion, and Rowell about Talley's call to employee relations. If Talley cannot prove that an individual Defendant knew about Talley's June 2021 complaint to employee relations, then Talley cannot prove that the individual Defendant later disciplined Talley because of her complaint. Further, the gap in time between Talley's 'immediate' complaint about the death certificate incident (June 2021) and the next disciplinary action taken by one of the individual Defendants (December 2021) cuts against Talley's argument that temporal proximity proves causation.

As a result, the court will **DISMISS** Count II for failure to plead a claim that entitles Talley to relief.

- **Count III: Equal Protection (§ 1983)**

Finally, Talley alleges that the individual Defendants violated her Fourteenth Amendment right to equal protection. The Equal Protection Clause clearly establishes "the right to be free from intentional racial discrimination," *Brown v. City of Fort Lauderdale*, 923 F.2d 1474,1478 (11th Cir. 1991). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). A "racially disproportionate" result of official action is relevant but not sufficient in proving an Equal Protection violation. *Id.*

Like Count I, the court finds that Talley pleads facts, that if proved true, would show she was disciplined because of her race. *See, e.g.*, (Doc. 16, ¶¶ 101-05, 109-10) (describing the disparate treatment between Talley and Christy Wright). So the court **DENIES** the individual Defendants' motion to dismiss Count III.

That said, Count III suffers from the same issues the court pointed out in Count I. Talley again barely mentions the acts taken by the individual Defendants—rather than the collective actions of the Health Department and its employees. *See* (Doc. 16, ¶¶ 109-11). As proof of racial animus, Talley quotes an unknown member of employee relations as saying, "we can do anything," without alleging that Gilbert, Gomillion, and Rowell knew about or agreed with the statement. (Doc. 16, ¶ 105).

So even though the court does not dismiss Count III, Talley should take the opportunity the court gives to amend Count II to plead more facts that would prove how each individual Defendant (Gilbert, Gomillion, and Rowell) was racially biased against her. For example, Talley should plead *within each count* the adverse action each individual Defendant took, and what fact(s) show that the action was taken because of race.

—

To sum up, the court dismisses Count II against the individual defendants for failure to plead facts that prove causation (*i.e.*, Talley fails to link her complaint to the individual Defendants' later actions). The court denies the motion to dismiss Counts I and III against the individual defendants but strongly suggests that, if Talley amends her complaint, Talley add facts about the individual Defendants' actions and motives.

### 4. Punitive Damages

One final note: arguments about punitive damages are essentially moot. Title 42, Section 1981a(b)(1) states that "[a] complaining party may recover punitive damages . . . against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." This section precludes punitive damages from the Health Department and Gilbert, Rowell, and Gomillion, in their capacity as government agents. But the court has dismissed all such claims, so § 1981a(b) has nothing to preclude.

All that remains are the individual claims against Gilbert, Rowell, and Gomillion. Section 1981a(b)(1) allows Talley to recover punitive damages on those claims if she can prove that an individual Defendant(s) "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Talley is free to seek discovery of facts that would help prove punitive liability, and each individual Defendant may seek judgment on punitive liability under Rule 56 if Talley fails to offer such evidence.

## CONCLUSION

For these reasons, the court **DISMISSES** all counts against the Calhoun County Department of Health and all counts against Gilbert, Rowell, and Gomillion in their official capacities. The court **DISMISSES** Count II against Gilbert, Rowell, and Gomillion in their individual capacities. The court denies the Defendants' motion to dismiss Counts I and III against Gilbert, Rowell, and Gomillion in their individual capacity.

All dismissals are **WITHOUT PREJUDICE**, meaning that the court will give Talley *one* chance to amend her complaint to address the issues detailed in this opinion and any other failures to comply with the federal rules. Talley must file her amended complaint by **September 20, 2024.**

**DONE** and **ORDERED** on September 11, 2024.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE